UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SEAN N. YOUNGS,

              Plaintiff,
 v.

LOUIS J. FUSARO, SR.,
W. T. MOLIS, JR.,
PATRICK MIKENS and
DELMAR CARTER,

              Defendants

Case No. 3:13-cv-476 (CSH)

MARCH 31 , 2016

**RULING ON MOTION FOR SUMMARY JUDGMENT**

HAIGHT, Senior District Judge:

      Plaintiff Sean N. Youngs claims, pursuant to 42 U.S.C. §§ 1983 and 1988, that Defendants, members of the City of Norwich Police Department, deprived him of his Fourth and Fourteenth Amendment rights by conducting a warrantless search of his business and by revoking his vendor's permit for his hot dog cart without due process. Defendants move for summary judgment under Federal Rule of Civil Procedure 56 on the merits or, alternatively, on the ground of qualified immunity. This Ruling resolves the summary judgment motion.

**I.**

      The following facts come from the parties' Local Rule 56(a)(1) and (2) statements and the attached exhibits. The facts included here are undisputed.[1] This case arises out of two separate,

---

[1] "In the Local Rule 56(a)(2) Statement, each denial of fact asserted by a moving party 'must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.' Failure to provide this specific citation 'may result in the court deeming certain facts that are supported by the evidence

1

but related, occurrences. First, Plaintiff's business, Who's Got Next Barber Shop, was searched pursuant to a search warrant with a purportedly incorrect address listed. This search led to Plaintiff's arrest after marijuana and other paraphernalia was found on the premises. Second, Plaintiff's vending license for his hot dog stand was revoked by the Chief of Police subsequent to his arrest without any opportunity for the Plaintiff to be heard. Plaintiff, Sean N. Youngs, also known as "Pitt," owns "Who Got Next Barber Shop." Complaint, ¶ 4. Plaintiff asserts that his business is located at 263 Central Avenue. Complaint, ¶ 4. At other times, he has described the address as 263A Central Avenue. Exhibit C, p. 2.

On July 2, 2010, two of the Defendants, Detectives Mickens and Carter, obtained a search and seizure warrant for 261 Central Avenue, Norwich, Connecticut, 06360 after a several month investigation into narcotics sales in the barber shop. Exhibit A-1. Judge Young of the Norwich Superior Court granted the application. *Id.* The warrant describes the location as:

> part of 261 Central Avenue, a large wooden structure, blue in color with white window and door trim. The building is multi-leveled with two storefronts on the first level and residential apartments and [sic] the second and third floors. Who's next Barbershop is located on the street level of the building. The words "Who's Next" are clearly written on the front window of the business and the numbers 261 are clearly posted on the mailbox next to the front door.

---

admitted.'" *Cousino v. Muir*, 2014 WL 3697879, at *1 (D. Conn. July 24, 2014) (*citing* L. Civ. R. 56(a)(3)). Furthermore, "a district court is obligated only to consider the materials [properly] cited to it by the parties." *Id.* (*quoting Morales v. New York State Department of Labor*, 530 F. App'x 13, 14 (2d Cir. 2013)). As in *Cousino v. Muir*, the Local Rule 56(a)(2) statement in this case is deficient in pointing the Court to evidence supporting Plaintiff's denials of assertions in Defendants' Local Rule 56(a)(1) statement. Rather surprisingly, Counsel for Plaintiff is the same in both this case and in *Cousino*. Counsel is again reminded to adhere to the Local Rules when preparing documents for submission to the Court. Furthermore, as in *Cousino*, where Defendants have alleged facts and supported them by evidence, and these facts are not properly denied by Plaintiff, complete with an assertion supported by evidence, they will be deemed admitted.

Exhibit A-1, p. 1.   There is no other barbershop at that location. Exhibit A, ¶ 11. Furthermore, Defendant Mickens called the city assessor prior to executing the search warrant to confirm the address. Exhibit A, p. 6. The Assessor for the City of Norwich stated, in an affidavit, that the property at issue is known as 261 Central Avenue, and that there are no property locations known as 263 Central Avenue or 263A Central Avenue. Exhibit D, p. 1.

The warrant was the result of an investigation beginning in January 2010. Exhibit A-2 p. 15. During the week of May 1, 2010, Detectives Mickens and Carter met with a Confidential Informant ("CI") for the purpose of making a controlled purchase of marijuana from the barbershop. Exhibit A, p. 4. The CI stated that he entered the barbershop, gave the plaintiff an amount of money, and then received marijuana in return. *Id.* at 4-5. In a second controlled buy, the CI entered the store adjacent to the barbershop, owned by L.D., a former business partner of the Plaintiff, with L.D.. *Id.* at 5. The CI and L.D. then exited the shop and entered the barbershop. *Id.* Upon leaving the barbershop, the CI met with Detective Mickens. *Id.* The CI stated that he purchased the marijuana from the Plaintiff. *Id.* at 6.

On July 2, 2010, at approximately 2:41 p.m., members of the Norwich Police Department executed the search and arrest warrants at Who's Next Barber Shop. Exhibit A, p. 6. Upon entering the barber shop, Defendants found marijuana and several items related to the sale of the narcotic. *Id.* at 18. During the search, members of the Norwich Police Department seized two pieces of mail. Exhibit A-3, p. 18. The first was an letter addressed to: Sean Youngs, 261A Central Avenue, Norwich, CT 06360. *Id.* The second was an AT&T flyer addressed to: Who's Next Barbershop, 263 Central Avenue, Norwich, CT 06360. *Id.* The police also seized marijuana, sandwich bags, a scale, and large amounts of U.S. currency. *Id.* at p. 17–20.

There was also an interior door between the shop owned by L.D., which sold incense and fragrant oils, and the barber shop. Exhibit A, ¶ 11.   Plaintiff characterized the shop owned by L.D. as being located at 261A Central Avenue. Exhibit C, p. 5.  Furthermore,Plaintiff was arrested during the search. Exhibit A-3, p. 17.

On July 7, 2010, Plaintiff's hot dog vendors license was revoked by Defendants Fusaro and Molis. The revocation was based solely on his arrest by Defendants Mickens and Carter on July 2. Exhibit F-1, p. 1. Defendant Lieutenant Molis sent the letter revoking Plaintiff's vendor's permit on behalf of Chief Louis J. Fusaro, Sr. *Id.*; Exhibit G. The Defendants revoked Plainitiff's license under Connecticut General Statute 21-37 and under City of Norwich Ordinance Section 15-5. Exhibit F-2, p. 3. City of Norwich Ordinance Section 15-5 regarding vendor's permits provides that "[t]he Chief of Police may in his discretion revoke any such license." *Id.*

## II.

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986). The moving party bears the burden of proof regarding the absence of any genuine issues of material fact. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (*citing Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)). Finally, summary judgment is only proper

where no reasonable inference could be drawn in favor of the nonmoving party. *Vivenzio*, 611 F.3d at 106 (*citing Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)) ("It is not the province of the court itself to decide what inferences should be drawn.").

### III.

The Plaintiff brought suit pursuant to 42 U.S.C. § 1983 to vindicate alleged Fourth and Fourteenth Amendment violations. Section 1983 does not itself confer substantive rights on a plaintiff, but is instead the means by which an injured party may seek vindication. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. A plaintiff must establish that "a person acting under color of state law deprived him of a federal right" to succeed on a § 1983 claim. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

**i.   Fourth Amendment**

Plaintiff claims that Defendants Mickens and Carter violated his right to be free from warrantless and unreasonable searches and seizures under the Fourth Amendment. Plaintiff asserts that "[a]t no time did the defendants Mickens and Carter have, or seek, a search warrant authorizing them to search the plaintiff's business or premises, although no exigent circumstances existed to justify or excuse their failure to do so." Doc. 1, ¶ 9. Defendants, on the other hand, contend that no Fourth Amendment violation occurred, even if the Court were to infer that the address of Plaintiff's property was 263 Central Avenue, instead of what was listed on the warrant, 261 Central Avenue.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" without probable cause. U.S. CONST. Amend. IV. The search and seizure provisions of the Fourth Amendment are incorporated against the states through the Fourteenth Amendment. *See Tenenbaum v. Williams*, 193 F.3d 581, 587 (2d Cir. 1999). Furthermore, the Fourth Amendment includes a requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." *Id.* This particularity requirement stems from the concern of the Founding Fathers towards the insidious and oppressive nature of general warrants. *Stanford v. State of Texas*, 379 U.S. 476, 481 (1965) ("Vivid in the memory of the newly independent Americans were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists."). The inquiry the court must engage in is "whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by executing officers." *United States v. Zemlyansky*, 945 F.Supp.2d 438, 450 (S.D.N.Y. 2013) (*quoting United States v. Hernandez*, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010)). The warrant must be sufficiently particularized to allow the officer executing the search warrant to "with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

"Courts . . . have rejected Fourth Amendment challenges to warrants that contain partial misdescriptions of the place to be searched so long as the officer executing the warrant could 'ascertain and identify the target of the search with no reasonable probability of searching another premises in error.'" *Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir. 1994) (*quoting United States v. Valentine*, 984 F.2d 906, 909 (8th Cir. 1993)). Furthermore, "[w]arrants have been upheld despite 'technical errors,' such as an incorrect street address, when the possibility of actual error is

eliminated by other information." *Velardi*, 40 F.3d at 576. Other information includes "a detailed physical description in the warrant itself, supplemental information from an appended affidavit, or knowledge of the executing agent derived from personal surveillance of the location to be searched." *Id*; *see also United States v. Lee Fang*, 1993 WL 51100, at *3 (S.D.N.Y. Feb. 24, 1993) (finding search warrant valid despite a typographical error in the address).

In this case, even assuming that the Plaintiff's business address was 263 Central Avenue, there is no Fourth Amendment violation. First, as to the scope of the search, it is clear that the judge intended that the officers tsearch the barbershop in the two storefront complex. The warrant described the storefront as a barbershop and as one of two stores on the first floor of the commercial and residential complex at 261 Central Avenue. The warrant went on to say that "Who's Next" was clearly written on the front window of the store. The affidavit and application for the Search and Seizure Warrant specifically mentions the officers observing controlled buys from the barbershop and mentions Sean Youngs as the target of their investigation. Unlike the defendant challenging the search warrant in *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2011), the name of the Plaintiff in this case was noted specifically as the target in the warrant application. It was *his* business that was the target, so whether or not the officer's had the correct street address, they did not exceed the scope of what the judge intended them to search.

Second, the search warrant was sufficiently particularized to avoid the concern that "the description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing officers to the limits of their search authority." *United States v. Berchansky*, 958 F.Supp.2d 354, 371 (2d Cir. 2013) (*citing United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011)). Under *Voustianiouk*, 685 F.3d at 212, the Second Circuit established two factors for analyzing

whether a warrant containing an error satisfies the particularity prong of the Fourth Amendment: (i) whether the description is adequate "to enable the executing officer to locate and identify the premises with reasonable effort," and (ii) "whether there is any reasonable probability that another premise might be mistakenly searched." Here, both factors are satisfied. The warrant was clear that the place to be searched was the barbershop. It is also apparent from the record that there was only one barbershop at the location. Furthermore, there was little risk that another premises would be searched. Despite the difference in the addresses, the store front was accurately described. The officers were not likely to search other premises given the detailed nature of the description. Even if, as the Plaintiff claims, his address was 263 Central Avenue, rather than 261 Central Avenue, as listed on the warrant, no Fourth Amendment violation occurred. There is no genuine dispute of material fact that would allow a reasonable jury to find that a Fourth Amendment violation had occurred. For these reasons, the Defendants are entitled to summary judgment on the Plaintiff's Fourth Amendment claims.

**ii.     Procedural Due Process**

Plaintiff asserts that, by summarily revoking his vendor's permit for his hot dog stand, the City of Norwich has deprived him of due process under the Fourteenth Amendment. U.S. CONST. Amend. XIV. The Defendants, on the other hand, claim that the Plaintiff did not have a constitutionally cognizable property interest in the vendor's permit, and as such, he was not entitled to the protections of the due process clause. The Defendants emphasize that because revocation lies explicitly within the total discretion of the Chief of Police, no constitutionally cognizable property interest exists.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty,

or property, without due process of law." U.S. CONST. Amend. XIV. The requirements of procedural due process apply solely to those deprivations of liberty and property interests protected by the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Id.* at 569–70. However, the "range of interests protected by procedural due process is not infinite." *Id.* at 570.

The first inquiry a court must make into the due process question is whether a property interest exists. *Kraebel v. New York City Department of Housing Preservation and Development*, 959 F.2d 395, 404 (2d Cir. 1992). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. A person must be entitled to a benefit before it becomes a property interest. *Id.* The inquiry into whether there is a constitutionally cognizable property interest involves two questions: (i) "whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff" and (ii) "[o]nce such a property right is found, [the question becomes] whether that property right constitutes a property interest for purposes of the Fourteenth Amendment." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (*quoting Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)).

In defining a property interest, the Supreme Court in *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577, noted that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." "[I]f state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a

property right entitled to due process protection." *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987) (*citing Schwartz v. Mayor's Committee on the Judiciary of the City of New York*, 816 F.2d 54, 56 (2d Cir. 1987); *Sullivan v. Town of Salem*, 805 F.2d 81, 84 (2d Cir. 1986)).

The provisions under which the Plaintiff received his vendor's license provide in relevant part: "Town ordinances re vending, hawking or peddling. . . . Any town may make reasonable ordinances with reference to the vending or hawking upon its public streets." C.G.S. 21-37. Futhermore, the City of Norwich Ordinances provide: "The Chief of Police may in his discretion revoke any such license." City of Norwich Ordinance §15-5. Under Second Circuit law, there is no constitutionally cognizable property interest "where the licensor has broad discretion to revoke the license;" however, there is a property interest where "discretion was carefully constrained." *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009). Because the Chief of Police has unfettered discretion to revoke the vendor's permits in the City of Norwich, there can be no property interest. Because there is no property interest, no process is due to the Plaintiff. The Defendants are entitled to summary judgment on the due process claims made by Plaintiff.

### iii. Conspiracy

Plaintiff also asserts two separate § 1983 conspiracy claims. Firstly, he asserts that Detectives Carter and Mickens conspired to deprive Plaintiff of his Fourth Amendment rights. Secondly, he asserts that Chief Fusaro and Lieutenant Molis conspired to deprive Plaintiff of his Fourteenth Amendment due process rights. Defendants argue that "he cannot make out the requisite elements of such a claim based upon any provable conduct that may be imputed to any of the defendants." Doc. 23-1, p. 37. In order to prove a § 1983 conspiracy, Plaintiff must prove the "*sine*

*qua non* of a § 1983 claim: a violation of the federal right." *Singer v. Fulton County* Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). This Court has already held that no reasonable jury could find either a Fourth Amendment or Fourteenth Amendment constitutional violation. *See supra* parts III(i) and (ii). Thus, no § 1983 conspiracy can exist, and Defendants are entitled to summary judgment.

**iv. Qualified Immunity**

Defendants assert, as a defense to both of Plaintiff's Fourth Amendment and Fourteenth Amendment claims, that they are shielded from the lawsuit by the doctrine of qualified immunity. "Qualified immunity shields government officials whose conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Martel v. Town of South Windsor*, 562 F.Supp.2d 353, 359 (D. Conn. 2008) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The threshold question is whether or not the Plaintiff's constitutional rights have been violated. *Martel*, 562 F.Supp.2d at 359. Then, the next inquiry the Court must make is whether that constitutional right was sufficiently clear that an objectively reasonable officer would understand that his actions would violate that right. *Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In other words, "[s]ummary judgment is appropriate when a trier of fact would find that reasonable officers could disagree." *Id.* (*citing Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)).

Here, for the reasons stated above, the Court finds that no constitutional rights have been violated. However, assuming contrary to that conclusion that Plaintiff's Fourth and Fourteenth Amendment Rights had been violated, the Defendants would be entitled to qualified immunity.

In *Velardi v. Walsh*, 40 F.3d 569 (2d Cir. 1994), the Second Circuit had occasion to consider a similar Fourth Amendment case. In *Velardi*, the police officers obtained a warrant allowing them

to search Velardi's residence, which was listed as the fourth house on a particular street. 40 F.3d at 576. After arriving at the scene, the police officers discovered that Velardi resided at the third house, and searched that one instead. The Second Circuit held that "[w]e do not think that the case law clearly established that police officers executing a warrant cannot rely on the sort of information gathered at the scene in this case to reinterpret the warrant's identification of the premises to be searched." The current state of the law reflects continued ambiguity in this area of law. It is still not, nor was it in 2010, clearly established that police officers could not rely on a warrant with a mistaken address. The cases consider such factors as whether the officers seeking the warrant included the target's name and how likely an officer was to search the wrong location based on the description in the warrant. *See supra* Part III(I). The police officers here acted with objective reasonableness, and had they conducted an inquiry into the standards regarding particularity, they would have struggled to descry the state of the law. The nuances of the body of law comprising the particularity requirements of contain "considerable ambiguity." *See Velardi*, 40 F.3d at 576. Thus, the police officers would be entitled to qualified immunity on the Fourth Amendment claims.

     Furthermore, the Defendants are entitled to qualified immunity for the Fourteenth Amendment due process claim brought by Plaintiff. In *Ace Partners, LLC v. Town of East Hartford*, 2011 WL 4572109 (D. Conn. Sep. 30, 2011), a police officer refused to renew a precious metals license. The court noted that "[a] right is 'clearly established' only if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Ace Partners*, 2011 WL 4572109, at *6 (*quoting Saucier v. Katz*, 533 U.S. 194 (2001)). The court concluded that it would not have been clear to a reasonable officer that refusing the metals license without a hearing would violate due process because the officer was granted "unfettered discretion." *Id.* Likewise, the

officers here are entitled to qualified immunity for the revocation of the vendor's license.  The City of Norwich Ordinances provide: "The Chief of Police may in his discretion revoke any such license." City of Norwich Ordinance §15-5. The law regarding procedural due process does not clearly make unlawful the denial of a benefit when the denial is statutorily within that officers discretion. Thus, Lieutenant Molis and Chief Fusaro are entitled to qualified immunity on the question of Plaintiff's due process claim.

### IV.

For the foregoing reasons, the motion is decided as follows:

Defendants' [23] *Motion for Summary Judgment* is GRANTED. The Clerk is directed to dismiss the Complaint as to these Defendants with prejudice, and to close the file.


It is SO ORDERED.

Dated: New Haven, Connecticut

March 31, 2016

                                                           */s/ Charles S. Haight, Jr.*

                                                       Charles S. Haight, Jr.

                                                       Senior United States District Judge